58

648 A.2d 1053

**Robert DeLEON, Thomas Foster and Rosa Rodriguez**

v.

**STATE of Maryland.**

**No. 1952, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Oct. 26, 1994.

Melissa M. Moore, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellants.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and William R. Hymes, State's Atty. for Howard County, Ellicott City, on the brief), for appellee.

Argued before WILNER, C.J., MOYLAN, J., and JAMES S. GETTY, Judge (Retired), Specially Assigned.

MOYLAN, Judge.

When a statutory sentencing provision for an inchoate crime, such as attempt or conspiracy, expressly sets as the maximum sentence for such inchoate crime the maximum sentence that has been provided for the substantive "target" crime, to what extent, if any, does that sentencing ceiling embrace any mandatory minimum sentencing requirements that have been imposed on the punishment for the substantive offense? Analytically, the answer should be the same whether the mandatory minima have been established across the board for the substantive offense or whether they apply only to

certain violators of the substantive offense who qualify for enhanced punishment.

A closely related question is whether increasing the maximum punishment for the substantive crime, either by lengthening the term of imprisonment or by making the conditions thereof more severe, not across the board generally but only for certain violators who qualify for enhanced punishment will correspondingly increase the maximum available penalty for those special perpetrators of the inchoate crimes who meet the same qualifications. These are problems with a number of permutations.

The appellants, Robert DeLeon, Thomas Foster, and Rosa Rodriguez, were all found to be guilty upon their pleas of guilty in the Circuit Court for Howard County. They each entered a guilty plea to the charge of conspiracy to distribute heroin, as well as to other charged conspiracies to violate the Controlled Dangerous Substances Act in various ways.

### The Enhanced Sentencing in this Case

At the time of sentencing, the convictions for the other conspiracies were either merged into the convictions for conspiring to distribute heroin or, in two instances, the sentences were made concurrent with the sentences for conspiring to distribute heroin. For conspiracy to distribute heroin, the three appellants were given sentences, respectively, of fifteen years, twenty years, and twenty years, with various provisions dealing with the suspension of part of the sentences and with probation to follow.

The common denominator sentencing provision, and all that concerns us here, was that, pursuant to Art. 27, § 286(f)(3), the first five years of each sentence was ordered to be served without the possibility of parole. The single contention now raised is that that no-parole provision was beyond the trial court's authority to impose. The appellants, accordingly, filed Applications for Leave to Appeal, which were granted by this Court.

### Sentencing for Conspiracy

The modern crime of conspiracy is essentially a product of the English Court of Star Chamber and especially its 1611 decision in *The Poulterer's Case*, 77 Eng.Rep. 813. As a common law crime brought into Maryland with the first settlement and guaranteed by Article 5 of the Maryland Declaration of Rights, it carried with it the common law penalty of any sentence deemed appropriate in the sound discretion of the trial court, unless some other sentencing provision has been enacted by the Legislature.[1] The one minimal limitation early placed on such discretionary sentencing was that the sentence could not be cruel or unusual within the contemplation of the Eighth Amendment of the United States Constitution or Article 25 of the Maryland Declaration of Rights.

There are now several sentencing provisions for conspiracy that have been provided by the Legislature. As their very wording reveals, however, they are not authorizing provisions creating in the trial court the authority to impose sentence. They are, quite to the contrary, limiting provisions, restraining, to the extent spelled out, the otherwise free-wheeling authority of the trial court to impose any sentence subject only to the constraints of its sound discretion and the constitutional inhibitions. The general restraining provision is that now spelled out by Article 27, § 38:

---

1. The Maryland Legislature first enacted a statutory penalty for the crime of conspiracy by ch. 651 of the Acts of 1927. It provided a maximum term of imprisonment of ten years and a maximum fine of $2,000 or both. The penalty provision did not in any way adjust the maximum penalty for conspiracy to the penalty available for the substantive crime that was the object of the conspiracy. Thus, conspiracy to commit a capital murder would carry a maximum penalty of ten years; conversely, conspiracy to perpetrate some minor misdemeanor, with a maximum penalty of one year or less, would also carry the possibility of a ten-year sentence. This remained unchanged until ch. 691 of the Acts of 1961 tied the maximum punishment for conspiracy to the maximum punishment provided for the substantive offense that was the object of the conspiracy.

The punishment of every person convicted of the crime of conspiracy *shall not exceed* the maximum punishment provided for the offense he or she conspired to commit. (emphasis supplied).

That, by its very terms, is a limiting provision, not an authorizing provision. Implicitly, however, a sentencing provision setting an upper limit confirms that the common law's discretion as to sentencing is free to operate up to that limit. With respect to the doctrinally indistinguishable statutory limit imposed on sentencing for the inchoate crime of attempt, we observed in *Walker v. State,* 53 Md.App. 171, 187, 452 A.2d 1234 (1982):

We read into that explicit legislative prohibition against exceeding certain limits, an implicit legislative approval of going up to those limits.

*See also State v. Hardy,* 53 Md.App. 313, 315, 452 A.2d 1299 (1982), *aff'd,* 301 Md. 124, 482 A.2d 474 (1983).

For violations of the Controlled Dangerous Substances Subtitle, § 290 provides an indistinguishable sentencing limitation as far as those particular conspiracies are concerned. It does embrace as well, however, a sentencing "cap" for another inchoate crime, attempt,[2] and for attempt's seemingly indistinguishable clone of "endeavoring."[3] Section 290 provides:

---

**2.** The general sentencing "cap" for the inchoate crime of attempt was enacted by the Legislature in ch. 453 of the Laws of 1976 and is codified as Article 27, § 644A:

The sentence of a person who is convicted of an attempt to commit a crime may not exceed the maximum sentence for the crime attempted.

*See generally Walker v. State,* 53 Md.App. 171, 185–187, 452 A.2d 1234 (1982); *State v. Hardy,* 53 Md.App. 313, 452 A.2d 1299 (1982), *aff'd,* 301 Md. 124, 482 A.2d 474 (1983).

**3.** There should be a prize awarded to the first lawyer who can come up with an instance of "endeavoring" to commit a crime that is neither an "attempt" to commit it nor a "conspiracy" to do so. It is a never-ending source of amazement how such little oddities creep into the law. The ultimate irony will come one hundred years from now, when lawyers will sagely ponder what subtle and profound nuance the

Except as provided otherwise under this subheading, any person who attempts, endeavors or conspires to commit any offense defined in this subheading is punishable by imprisonment or fine or both *which may not exceed* the maximum punishment prescribed for the offense, the commission of which was the object of the attempt, endeavor or conspiracy. (emphasis supplied).

### *The Sentencing Labyrinth of § 286*

The underlying crime toward which the appellants conspired was that spelled out by § 286(a)(1), which provides, in pertinent part:

[I]t is unlawful for any person: to ... distribute ... a controlled dangerous substance ...

If the controlled dangerous substance that the appellants conspired to distribute, moreover, was a narcotic drug, such as the heroin in this case, subsection (b)(1) then provides that the violator "is guilty of a felony and is subject to imprisonment for not more than 20 years, or a fine of not more than $25,000, or both." For conspiring to violate the combination of subsections (a)(1) and (b)(1), § 290 would thus seem to provide the corresponding limitation that the sentence not exceed imprisonment for twenty years or a fine of $25,000 or both, unless some greater sentencing possibility has been "provided otherwise under this subheading."

From this point on in this opinion and simply for the sake of linguistic simplicity, we are going to discuss the sentencing question only in terms of its imprisonment aspect. That is the only variable that concerns us in this case. Our failure to mention the alternative or additional possibility of a monetary fine is nothing more than an avoidance of a needless repetition of an alternative and/or additional sentencing possibility that does not affect this decision.

---

framers had in mind, unable to grasp the simple truth that the framers probably had nothing in mind.

The substantive crime toward which the appellants conspired carries a presumptive maximum term of imprisonment of twenty years. The presumptive maximum sentence for the inchoate conspiracy is, thereby, also twenty years. If the maximum for the substantive crime were to be raised to forty years, the maximum for the conspiracy would correspondingly rise with it. If the maximum for the substantive crime were reduced to ten years, the maximum for the conspiracy would *ipso facto* fall with it.

That simple correlation, however, does not begin to resolve more subtle questions such as what, if any, impact there might be on the sentencing range for conspiracy when special sentence-enhancing provisions are enacted for its underlying substantive offense, such as 1) a mandatory minimum, either generally or for some special offenders under certain special circumstances; 2) a mandatory no-parole provision; 3) a mandatory no-suspension-of-sentence provision; or 4) a higher maximum sentence not for the crime generally but for certain special offenders, such as recidivists.

For the substantive crime of violating subsection (a), subsection (b) provides the normal, non-enhanced penalties.[4] Subsections (c), (d), (e), and (f) of § 286 then provide four sentence-enhancing provisions for four respective sets of aggravating circumstances. Subsection (c) provides that if the convicted defendant has been convicted under subsections (b)(1) or (b)(2) and has previously been convicted of a similar substantive offense under the laws of this State or any other American jurisdiction or has been convicted of conspiracy to commit such an offense, the following sentence-enhancing provisions shall apply: 1) there will be a mandatory minimum of ten years imprisonment, 2) the sentence may not be suspended to less than ten years, and 3) there can be no parole during that ten-year period.

---

4. Subsection (b)(3) does contain one enhancement provision not here pertinent.

Subsection (d) deals with similarly convicted defendants who, *inter alia,* have two qualifying prior convictions. The sentence-enhancing provisions in such a case include 1) a mandatory minimum sentence of not less than twenty-five years, 2) a mandatory non-suspension-of-sentence provision for the entire twenty-five years, and 3) a mandatory no-parole provision for the entire twenty-five years.

Subsection (e) deals with a similarly convicted defendant with, *inter alia,* three or more such qualifying prior convictions and provides, by way of sentence enhancement: 1) a mandatory minimum of forty years, 2) mandatory non-suspension for the entire forty years, and 3) mandatory no-parole for the entire forty years.

Subsection (f), of immediate concern to us on this appeal, deals with a sentence-enhancing qualifier other than recidivism. It treats as the aggravating factor for a conviction under subsection (a)(1) the respective quantities of various controlled dangerous substances involved in the illicit manufacturing, distributing, dispensing, or possessing with the intent to manufacture, distribute, or dispense. Upon the showing of such a requisite quantity of the requisite substance, 1) the convicted defendant will be subject to a mandatory minimum of five years imprisonment, 2) none of that five-year term of imprisonment may be suspended, and 3) the prisoner will not be eligible for parole during such five-year period.

### The Setting, By Reference, of a Maximum
### Does Not Incorporate, By Reference,
### a Mandatory Minimum

■ Turning from these sentence-enhancing provisions for the substantive crimes to the sentencing possibilities for conspiracy to commit such substantive crimes, to what extent, if any, does § 290, providing that the conspiracy punishment "may not exceed the maximum punishment prescribed for" the substantive offense, also embrace the statutory, sentence-enhancing provisions provided for the substantive offense? The answer is little, if any. There are a number of reasons for such an answer.

In a very fundamental sense, neither § 290 nor § 38 do anything to the possible sentence for conspiracy other than impose a ceiling on the trial judge's otherwise open-ended common law sentencing discretion. The conspiracy sentencing provisions and the substantive crime sentencing provisions are linked only at their upper ends, not at their lower ends. To legislate as to the ceiling is not to legislate as to the floor. A sentencing provision that provides only that a sentence *"may not exceed the maximum"* provided for something else clearly does not incorporate any minimum or mandatory provisions provided for that something else.

Indeed, mandatory minima, mandatory non-suspension provisions, and mandatory no-parole provisions are antithetical to the wide-open discretion that is the salient characteristic of common law sentencing. The common law, in this or in any other regard, may not be repealed by implication. Unless expressly abrogated, common law sentencing discretion for conspiracy would include the options of imposing less than the statutory minimum provided for the target substantive offense, imposing no sentence of imprisonment at all, suspending all or any part of any sentence imposed, and refraining from any attempt to interfere with the normal operation of parole procedures. To legislate that an otherwise discretionary sentence may not go above some designated maximal point does not even imply, let alone unequivocally state, that such discretion may not go below some designated minimal point. To engraft, by implication, a mandatory minimum—be it a minimum sentence or a minimum on eligibility for a suspended sentence or a minimum on eligibility for parole—onto a conspiracy sentencing statute that has no such express minima would be to repeal common law sentencing discretion by implication.

In terms of an arguably mandatory provision that all or part of a sentence not be suspended, § 643 would control where applicable:

In all cases where the law prescribing a punishment for crime fixes a maximum and a minimum penalty therefor, the several judges of the circuit courts of the counties and of the

District Court of Maryland may, in lieu of the minimum penalty so prescribed, impose a lesser penalty of the same character ...

Both *State v. Fisher,* 204 Md. 307, 313–315, 104 A.2d 403 (1954) and *Woodfork v. State,* 3 Md.App. 622, 624–625, 240 A.2d 314 (1968) have held that § 643's bar on mandatory minimum sentences applies only to sentencing provisions in effect prior to the time of its enactment by ch. 536 of the Acts of 1906. If subsequently enacted sentencing provisions expressly authorize mandatory minimum sentences, those subsequent expressions of legislative intent will, of course, be controlling. The common law sentencing for both attempt and conspiracy, however, antedate ch. 536 of the Acts of 1906 by at least three hundred years and are, therefore, controlled by it in the absence of any post–1906 express command to the contrary.

With respect to the arguably mandatory provision that the trial judge sentence the appellants to no less than five years of non-suspended imprisonment and that those five years be served without possibility of parole, we find the recent decision of the Court of Appeals in *Taylor v. State,* 333 Md. 229, 634 A.2d 1322 (1993), to be highly persuasive. That case, as this, dealt with an arguably mandatory no-parole provision. It dealt with it in the context of § 643B(c), providing for mandatory enhanced sentences for habitual perpetrators of certain enumerated crimes of violence.

The defendant there was sentenced to a term of life imprisonment for first-degree murder. Three qualifying prior convictions for crimes of violence were proved against him. A reading of § 643B(c), however, gave rise to a question of whether the no-suspension and no-parole provisions of that subsection necessarily applied to the entire term of life imprisonment or only to the mandatory minimum term of twenty-five years. In terms of statutory construction, the Court looked to its own earlier decision of *Malcolm v. State,* 314 Md. 221, 550 A.2d 670 (1988) and concluded:

We found the language of that statute to be ambiguous with respect to whether the limitation on parole eligibility applied only to the 10–year minimum sentence, or whether the limitation could be applied as well to any longer sentence that might be imposed. *Malcolm v. State,* 314 Md. at 234, 550 A.2d at 676. We relied on the long-standing rule that *"where, as here, a penal statute is ambiguous, the provision should be construed in favor of the defendant. . . ."* (emphasis supplied).

333 Md. at 235, 634 A.2d 1322.

Judge Karwacki's analysis, 333 Md. at 234, 634 A.2d 1322, recognized that it is within the total discretion of the sentencing judge to suspend all or part of a sentence and similarly within his discretion, under § 412(d), whether to order that the sentence be served with or without the possibility of parole, except to the extent that that discretion has been cabined by some express legislative provision to the contrary:

We begin our analysis with the recognition that first degree murder which does not meet the criteria for the death penalty . . . is punishable by life imprisonment, *which may be ordered to be with or without parole in the discretion of the sentencing judge. It is also within the discretion of the judge to suspend all or part of a sentence* of life imprisonment pursuant to Md.Code (1957, 1992 Repl.Vol.) Article 27, § 641A, *unless the power of the trial court to do so is limited by some other provision of law.* (citations and footnote omitted) (emphasis supplied).

In *Taylor,* there was genuine doubt as to whether the no-suspension and no-parole provisions applied to all of the sentence imposed. Judge Karwacki explained why such doubt had to be resolved in favor of the defendant:

It is, in the very least, ambiguous with respect to the limitation on parole eligibility and the limitation on a judge's ability to suspend the sentence. *Because an enhanced punishment statute is "highly penal, [it] must be strictly construed."* ("[W]here there is doubt concerning the severity of the penalty prescribed by a statute, a milder penalty

over a harsher one will be favored.") Because the language of § 643B(c) is ambiguous with respect to the harshness of the penalty to be imposed, the reasoning this Court applied in *Malcolm, supra,* is equally applicable here. (citations omitted) (emphasis supplied).

333 Md. at 237, 634 A.2d 1322.

In terms of the applicability of the mandatory no-parole provision of § 286(f)(3) to the convicted conspirators in this case, the State has not generated so much as a state of doubt. Even had it done so, however, under the authority of *Taylor* we would resolve that doubt in favor of the appellants. *See also Malcolm v. State,* 314 Md. 221, 234, 550 A.2d 670 (1988); *Gargliano v. State,* 334 Md. 428, 639 A.2d 675 (1994).

### *Enhancing the Available Maximum Sentence*

■ What happens, however, at the other end of the sentence-enhancing spectrum, where the effect of the enhancing provision is not to provide mandatory minima but, rather, to raise the available maximum sentence for those qualifying for enhanced punishment? When the sentence enhancement is not a mandatory minimum on the sentence or on the suspension thereof or on parole but is instead an "upping of the ante" on the maximum term of imprisonment, the question of the linkage between sentence enhancement for certain perpetrators of the substantive crime and similarly situated conspirators is more problematic. Subsections (d) and (e), for instance, raise an ordinary twenty-year maximum to maxima of twenty-five years and forty years, respectively, for "three time" and "four time losers."[5] Would § 290 similarly permit

---

5. The phraseology has received the blessing of Judge Raker in *Gargliano v. State,* 334 Md. 428, 440–441, 639 A.2d 675 (1994):

Subsection (c), mandating a sentence of at least ten years for a defendant who previously has been convicted of a similar offense, is commonly referred to as a "two-time loser" penalty. Subsection (d) of § 286 mandates a penalty of not less than 25 years for a "three-time loser," an individual who "previously has served at least one term of confinement of at least 180 days in a correctional institution as a result of a conviction of a previous violation ... and has been convicted twice, where the convictions do not arise from a single

convicted conspirators who are "three time" or "four time losers" to be sentenced to as much as twenty-five years or forty years? The question is not literally before us for subsection (f), here pertinent, has no such enhancing provision.

Indeed, as a practical matter, the question can never arise. A conspirator meeting the profile described either by subsection (d) or subsection (e) will never be sentenced under § 290. Both of those sentence-enhancing provisions expressly include as a qualifying predicate crime either the substantive violations there spelled out or *the conspiracy to commit such substantive violations.* The enhanced sentencing for such conspirators, therefore, both in terms of higher maximum sentences and in terms of the whole panoply of mandatory minima, is done directly pursuant to the sentencing provisions of subsections (d) and (e). Section 290 is in no way involved.

For reasons to be more fully discussed as we address the last sub-issue, it is logically compelling that when a sentencing provision such as § 290 states that the punishment for an inchoate crime shall not exceed the maximum punishment provided for the target crime, such a provision contemplates the ordinary maximum available for all who perpetrate the target crime and does not incorporate the enhanced penalty provisions available only for certain of those perpetrators.

Section 643B, by way of analogy, provides significantly enhanced sentencing for recidivist perpetrators of designated crimes of violence. It would strain credulity to argue that under § 38, providing generally that a sentence for conspiracy may not exceed the maximum sentence for the target crime, a conspirator to commit armed robbery, appropriately recidivistic, could be subjected to the enhanced sentences available under § 643B. A reference to another inchoate crime, attempt, would clinch that argument. Rather than rely upon the strained argument that an attempted armed robber could,

---

incident." If an individual "previously has served 3 separate terms of confinement as a result of 3 separate convictions," the "four-time loser" provision of § 286(c) applies and an enhanced sentence of not less than 40 years is mandated. (footnotes omitted).

under § 644A, be subjected to the same enhanced penalties as the perpetrator of a consummated armed robbery, § 643B expressly included "an attempt to commit any of the aforesaid offenses" within its direct substantive coverage. Even doubt in this regard, of course, would be resolved in a defendant's favor by virtue of the Rule of Lenity.

### Even If A Judge Is Not Required To Order No–Parole, May He Do So?

The problem is slightly more involved when it comes to the possibly secondary or indirect effects of sentence-enhancing provisions of the mandatory-minimum variety. There are three common provisions of this type. They are 1) a mandatory minimum sentence, 2) a mandatory provision that none of a sentence be suspended or that a designated part of it not be suspended, and 3) a mandatory provision that for all or for a designated part of a sentence the possibility of parole will be forbidden. Even granting that the *mandatory* aspect of such a provision for the substantive offense shall have no effect on a provision limiting only the *maximum* sentencing available for conspiracy, to what extent might such a provision, *even if non-mandatory*, nonetheless create a *permissive possibility* for the conspiracy sentence to be made more severe? If it might create such a penalty enhancing possibility, would that not be an instance of raising the maximum allowable punishment? Would § 290 permit that?

Two of the mandatory minimum provisions do not even lend themselves to this analysis because as non-mandatory, permissive possibilities, they are meaningless redundancies. A mere permissive option to impose for conspiracy the statutory minimum for the target offense is subsumed in the greater option to impose an even longer sentence. A mere permissive option *not to suspend* all or part of the conspiracy sentence is self-evidently available whether a no-suspension provision for the substantive offense had ever been enacted or not.

This is not so, however, when it comes to a no-parole provision. Even if such a provision is not mandatory for a conspiracy sentence, the question remains of whether the

conspiracy sentencing judge has now been given the *option* of imposing this additional penal sanction that would not otherwise have been in his arsenal. On the one hand, a term of imprisonment of twenty years without the possibility of parole is no longer and no greater than a term of imprisonment for twenty years without such a condition. On the other hand, the conditions under which that term of twenty years will be served have been made, in a very significant regard, more severe. What precisely does the phrase "maximum punishment" connote and what precisely does an upper limit on such "maximum punishment" forbid?

Even if the trial judge was not required to impose on the three appellants in this case the condition that five years of their respective sentences would be served without possibility of parole, would he have been permitted to do so in the exercise of his sentencing discretion? If a no-parole condition is not generally available as a sentencing option but is available (indeed, mandatory) for a violation of § 286(a)(1) by virtue of § 286(f)(3), does it thereby also become an available option (even if not mandated) for those convicted of conspiring to violate § 286(a)(1) who satisfy the additional requirements of § 286(f)(3)? The answer is, "No."

### No Inherent Judicial Power To Restrict Parole

It is not an inherent part of the judicial sentencing function to regulate in any fashion the eligibility of a convicted prisoner for parole. Except in those limited circumstances when the Legislature has expressly empowered the courts to impose no-parole provisions under certain very specifically designated circumstances, the parole function is exclusively within the control of the executive branch of government. The best analysis we have found of this basic separation-of-powers issue is that by Judge Alpert in *Simms v. State*, 65 Md.App. 685, 689–690, 501 A.2d 1338 (1986):

> Parole ... is a purely executive function, the exercise of which must be, and by statute is, committed to an executive agency—the Maryland Parole Commission. *See* Md.Code Ann. art. 41, § 110(a): "The Commission has the *exclusive*

power to ... '[a]uthorize the parole of individuals sentenced under the laws of this State to any penal or correctional institution, jail, or other place of confinement or detention within this State....'

A parole is an act of *executive* clemency. It does not involve the sentencing function or any other judicial function. It is a conditional *release* (rather than *exemption*) from imprisonment granted by the Parole Commission which "entitles the recipient thereof to leave the institution in which he was imprisoned, and to serve the remainder of his term outside the confines thereof if he shall satisfactorily comply with all the terms and conditions *in the parole order*." Art. 41, § 107(e) (emphasis added); *Murray v. Swenson,* 196 Md. 222, 76 A.2d 150 (1950). A judicial order of restitution as a condition of parole is not binding on the Parole Commission. The Commission may, if it chooses, exercise its discretion in light of such comments or recommendations of a sentencing judge, or it may ignore them. COMAR 12.08.01.18A so provides:

(1) The commission shall have the *exclusive power* of parole release." (emphasis in original).

In the *Simms* case, the sentencing judge had attempted to make restitution to the victim a condition of the defendant's parole eligibility. We held, 65 Md.App. at 690–691, 501 A.2d 1338, that although a judge might condition probation eligibility on the making of restitution, because probation is under the inherent control of the judicial branch of government, the judiciary, absent some express grant of authority by the Legislature, may not impose conditions on parole eligibility:

If, indeed, as we indicated earlier, the granting of parole is an executive function to be exercised exclusively by the Parole Commission, it necessarily follows that only the Parole Commission can determine the conditions to be attached to a parole. For a court to attempt to do so would involve the exercise of a non-judicial function and would necessarily intrude upon the discretion committed to the Parole Commission. We do not believe that the legislature

ever intended to violate the "Separation of Powers" doctrine and therefore the statute must be construed so as to preclude the imposition of parole conditions by a court.

In *Collins v. State*, 318 Md. 269, 568 A.2d 1 (1990), the Court of Appeals held that there is no inherent power in the judicial branch of government to order that a sentence be served without possibility of parole, except in those limited circumstances where the Legislature has specifically authorized the judicial branch to do so.[6] Prior to July 1, 1987, the only penalties available for a convicted first-degree murderer were death or imprisonment for life. Chapter 237 of the Acts of 1987 added the third sentencing option of "imprisonment for life without the possibility of parole." The Court of Appeals held in *Collins*, 318 Md. at 298, 568 A.2d 1, that that

---

**6.** Although the issue is not before us in this case, there are some intriguing aspects to the relationship between the separation of powers doctrine and the no-parole provisions. Article 8 of the Maryland Declaration of Rights provides:

That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other.

In *Watkins v. Watkins*, 2 Md. 341, 356 (1852), the Court of Appeals held that the judiciary may not compel action on the part of a coordinate branch of government. The administration of parole is handled by the executive branch of government. The Legislature, of course, always has the power to provide that parole will not be available for persons convicted of certain offenses under certain circumstances. Via that modality, the Legislature, in effect, informs the executive branch that the granting of parole will not be authorized in those circumstances.

May, however, the legislature branch direct *the judicial branch* to direct the executive branch that parole will not be permitted? If the sentencing judge is doing nothing more than declaring that a particular verdict places the defendant in what the Legislature has determined to be a no-parole category, perhaps so. In such case, the judge would not be making the no-parole decision but would simply be serving as the medium for officially communicating an automatic no-parole situation to the executive branch. May, however, the Legislature delegate to the judge the broader *discretionary* authority to decide for the executive branch what it may or may not do with respect to parole? To wit, may the sentencing judge be authorized to decide in his discretion that there will be no parole or may only the Legislature make such a decision and make it, moreover, only on a broad categorical basis? Such weighty issues are mercifully not before us today.

third sentencing option was only available as of the effective date of the legislative authorization:

Collins maintains that the trial court erred in denying counsel's motion to have life without the possibility of parole considered as a sentencing alternative....

We rule *the life without parole sentencing option is only available for offenses occurring after the effective date of the provision,* July 1, 1987. Ch. 237, Laws of 1987. The instant offense occurred prior to the effective date. Therefore, Collins' argument regarding a statutory right to the life without parole sentencing option has no merit. (citations omitted) (emphasis supplied).

In *White v. State,* 322 Md. 738, 589 A.2d 969 (1991), the Court of Appeals held that even when a defendant requests a no-parole provision as something to be included in the sentencing options and agrees to waive any possible objection thereto, a no-parole provision, unless expressly authorized, would be illegal and the sentencing judge would not be permitted to impose it:

... [T]he defendant contends the trial judge erred in denying the defendant's motion that the trial judge include the sentence of life without parole as an available sentencing alternative. In support of his motion, the defendant filed a written waiver of any objection to the imposition of such a sentence, and testified that he knowingly waived "any *ex post facto* argument" concerning imposition of penalty. Judge Turnbull ruled that he had no authority to impose a sentence not permitted by law, and that the defendant could not confer that authority upon him by consent or waiver. He was correct.... *Imposing the requested sentence in this case would be illegal.* (emphasis supplied).

322 Md. at 749, 589 A.2d 969.

For the sentencing judge even to have been permitted, let alone required, to impose the no-parole condition on the appellants in this case, some specific legislative grant of authority to do so would have to be found. The State argues in this regard that § 290's use of the words "maximum

punishment prescribed for the [target] offense" is enough to incorporate by reference the sentencing provisions of § 286(f)(3). We do not agree that that is the case.

### No Legislative Authorization To Restrict Parole

■■■ We hold that § 290, limiting the punishment for conspiracy to the maximum punishment available for the target offense, does not embrace those special enhanced penalty provisions applicable only to certain violators of the target offense. Section 290 nowhere affirmatively states that enhanced penalties for the violators of the substantive offenses will be within the punishment range for convicted conspirators. We hold that it does not do so by implication.

In this regard, we find particularly persuasive the Supreme Court decision of *Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). In many respects, *Bifulco* is the mirror image of the case now before us. The Comprehensive Drug Abuse Prevention and Control Act of 1970 was promulgated contemporaneously with our Controlled Dangerous Substances Act, enacted by ch. 403, Acts of 1970. In *Bifulco*, as in this case, the conviction was for conspiracy to commit one of the target offenses spelled out by the Comprehensive Act. The target offense, in that case § 401(a) of the Act, is tracked almost *verbatim* by § 286(a) of the Maryland Act. The common wording is in ALL CAPS.

| Federal<br>§ 401(a) | Maryland<br>§ 286(a) |
|---|---|
| EXCEPT AS AUTHORIZED BY THIS title, IT shall be UNLAWFUL FOR ANY PERSON knowingly or intentionally— | EXCEPT AS AUTHORIZED BY THIS subheading, IT is UNLAWFUL FOR ANY PERSON: |
| (1) TO MANUFACTURE, DISTRIBUTE, OR DISPENSE, OR POSSESS with INTENT TO MANUFACTURE, DISTRIBUTE, OR DISPENSE, A CONTROLLED SUBSTANCE. | (1) TO MANUFACTURE, DISTRIBUTE, OR DISPENSE, OR to POSSESS a controlled dangerous substance in sufficient quantity to reasonably indicate under all circumstances an INTENT TO MANUFACTURE, DISTRIBUTE, OR DISPENSE, A CONTROLLED dangerous SUBSTANCE. |

The defendant in *Bifulco,* as the appellants here, was convicted of a single count of conspiring to violate the target offense. Section 406 of the Federal Act is the penalty provision for the inchoate crimes of attempt or conspiracy to violate the Federal Act. It is tracked almost *verbatim* by § 290 of the Maryland Act. The common wording is in ALL CAPS.

| Federal § 406 | Maryland § 290 |
|---|---|
|  | Except as provided otherwise under this subheading, ANY PERSON WHO ATTEMPTS, |
| ANY PERSON WHO AT-TEMPTS OR CONSPIRES TO COMMIT ANY OFFENSE DEFINED IN THIS title IS PUNISHABLE BY IMPRISONMENT OR FINE OR BOTH WHICH MAY NOT EXCEED THE MAXIMUM PUNISHMENT PRESCRIBED FOR THE OFFENSE, THE COMMISSION OF WHICH WAS THE OBJECT OF THE ATTEMPT OR CONSPIRACY. | endeavors OR CONSPIRES TO COMMIT ANY OFFENSE DEFINED IN THIS subheading IS PUNISHABLE BY IMPRISONMENT OR FINE OR BOTH WHICH MAY NOT EXCEED THE MAXIMUM PUNISHMENT PRESCRIBED FOR THE OFFENSE, THE COMMISSION OF WHICH WAS THE OBJECT OF THE ATTEMPT, endeavor OR CONSPIRACY. |

In *Bifulco,* the question was whether a special parole provision, for present purposes doctrinally indistinguishable from the no-parole provision before us in this case, was properly applied to the convicted conspirator. The position of the Government in that case was actually stronger than the position of the State in this case, for the special parole provision was generally available for those guilty of the substantive target offense and was not a special enhanced penalty provision available only for particular violators. Justice Blackmun posed the question for the Supreme Court:

The narrow, but important, question presented in this case is whether § 406, which states the penalty for conspiracy as "imprisonment or fine or both," but limits maximum punishment by reference to the penalty provisions of the substantive target offense, authorizes the imposition of a

special parole term where that sanction is included within the penalty provisions of the target offense.

447 U.S. at 385, 100 S.Ct. at 2251.

In rejecting the Government's argument that the sentencing provision for conspiracy included by implication the special parole provision for the substantive offense, the Supreme Court began its analysis by pointing out that the Rule of Lenity would require resolving any ambiguity in favor of the defendant's position:

> The Government recognizes that our examination of the meaning of § 406 must be informed by the policy that the Court has expressed as "the rule of lenity." In past cases the Court has made it clear that this principle of statutory construction applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose. The Court's opinion in *Ladner v. United States*, 358 U.S. 169, 178, 3 L.Ed.2d 199, 79 S.Ct. 209 [214] (1958), states the rule: "This policy of lenity means that *the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.*" (citations omitted) (emphasis supplied).

447 U.S. at 387, 100 S.Ct. at 2252. In addressing an essentially indistinguishable question of statutory construction, we also shall employ the rule of lenity to resolve any ambiguity in favor of the appellants here. Our examination of § 290 in total context, indeed, leads us to conclude that it unambiguously requires the reading the appellants would give it. *A fortiori*, that precludes an unambiguous reading in the opposite direction.

One factor deemed important by the Supreme Court was that the provision for sentencing conspirators made no express reference to special parole:

> That no reference is made to special parole in § 406 thus supports petitioner's view that Congress *did not intend* it to

constitute an element of the sentence imposed upon one convicted of conspiracy or attempt. (footnote omitted).

447 U.S. at 390, 100 S.Ct. at 2253–54. Neither does § 290 of the Maryland Act make any express mention of a no-parole provision. The pregnant silence of the Legislature in this regard "tilts" us even as comparable Congressional silence "tilted" the Supreme Court.

Although all of the substantive offenses to which the federal conspiracy sentencing provision referred authorize imprisonment as a punishment, all of them do not authorize special parole:

[S]pecial parole is not authorized for all substantive offenses to which § 406 refers. Therefore, "imprisonment" within the meaning of § 406 does not always include special parole.

447 U.S. at 388, 100 S.Ct. at 2253. Although all of the substantive offenses to which Maryland's § 290 refers authorize imprisonment as a punishment, all of them do not authorize the no-parole condition. That is a special provision imposable only on special violators under special, legislatively determined circumstances.

Although the Government in *Bifulco* stressed the fact that a special parole (it could as easily have been a no-parole) provision would seem to fit within the meaning of "maximum punishment" contained in the conspiracy sentencing statute, the Supreme Court responded that a special parole (it would be the same for a no-parole) provision could not so readily be accommodated within the immediately preceding language of "punishable by imprisonment or fine or both":

The Government contends that the language of the statute supports this reading because § 406 authorizes penalties "which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy." While this argument is not wholly without force, it ignores the immediately preceding words of § 406, which state that "[a]ny person who attempts or conspires to commit any offense defined in this title is punishable *by imprisonment or fine or both.*"

Petitioner argues that § 406 defines the types of punishment authorized for conspirators—imprisonment, fine, or both—and sets maximum limits on those sanctions through reference to the penalty provisions of the target offense. Petitioner's reading of the language of § 406, and the sentencing scheme that it proposes, is no less plausible than the Government's. (emphasis in original).

447 U.S. at 388–389, 100 S.Ct. at 2253. This is equally true of the Maryland provision. Section 290 speaks of a convicted conspirator's being "punishable by imprisonment or fine or both." In this regard, the Maryland provision and the Federal provision are linguistically indistinguishable. There is nothing to persuade us to distinguish semantically that which is indistinguishable linguistically.

In *Bifulco,* the Solicitor General argued strenuously that major drug conspirators are just as dangerous as, if not more dangerous than, most violators of the substantive drug laws and that the Congress, therefore, must have intended to punish them no less severely. The Supreme Court pointed out that that logic was belied by the fact that the sentencing provision for inchoate crimes made no distinction between conspiracy and attempt:

What the Government does not mention, however, is that § 406 sets identical penalties for conspiracies and for attempts. Congress dealt with both these forms of inchoate crime in a single provision, and prescribed an identical range of punishment for a person convicted of participation in a major trafficking conspiracy, and for another person convicted of an unsuccessful attempt to manufacture or distribute a small amount of a controlled substance. When one focuses on the fact that § 406 penalizes attempts as well as conspiracies, it is not surprising that Congress would provide for less stringent sanctions to be imposed for violations of that provision than for a completed substantive offense.

447 U.S. at 399, 100 S.Ct. at 2258. Section 290 of the Maryland Act makes no distinction between conspiracies and

attempts. When the Maryland drug laws want to get tough with conspirators, as the specific sentencing provisions of § 286 do on at least four occasions, they distinguish quite clearly the inchoate crime of conspiracy from the inchoate crime of attempt.

The Supreme Court finally pointed out that if the Congress wished for its sentencing provision for inchoate crimes to include all penalties available for violations of the substantive law, it simply had to make the appropriate amendment to make the penalty statute express such an intent:

> If our construction of Congress' intent, as evidenced by the scant record it left behind, clashes with present legislative expectations, there is a simple remedy—the insertion of a brief appropriate phrase, by amendment, into the present language of § 406. But it is for Congress, and not this Court, to enact the words that will produce the result the Government seeks in this case.

447 U.S. at 400–401, 100 S.Ct. at 2259. We similarly defer to our legislative branch.

Indeed, the National Congress in 1988 amended the Federal conspiracy sentencing statute, now codified as 21 U.S.C. § 846 (1994 Supp.), to read:

> Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

The use of equivalency language, "the same penalties as," rather than limiting language, "which may not exceed," tied the Federal penalties for the inchoate crimes more closely to the penalties for the target crimes than had theretofore been the case. No such change has been undertaken by the Maryland Legislature. Even if we were to assume ambiguity in our sentencing statute for inchoate crimes, the State has not persuaded us why we should attempt to resolve judicially what Federal experience seems to demonstrate is more appropriately resolved legislatively.

## *Maryland's Avoidance of Ambiguity*

The nagging fear expressed by the State's argument is that a strict construction of § 290 might inadvertently place a "cap" on certain convicted conspirators whom the Legislature wished to punish more severely—that it might erroneously preclude enhanced punishment for conspirators who violate the drug laws even where the Legislature intended such conspirators to be eligible for enhanced punishment. The precision of our legislative enactments, however, demonstrates that such fear is not well founded. Where the Maryland Legislature has wished to subject drug conspirators to enhanced punishment, it has done so expressly and unequivocally and has left nothing to mere implication.

Section 290, providing that the "imprisonment or fine or both" to be imposed upon those who attempt or conspire to violate the substantive narcotics laws "may not exceed the maximum punishment prescribed for" the target offense, was enacted by ch. 403 of the Acts of 1970. There was at that time clearly no legislative intent, one way or another, with respect to enhanced punishments that had not yet been enacted or even proposed for substantive violations of the narcotics law.

It was in 1989 that the Legislature first moved massively to tighten the screws on certain drug conspirators by significantly enhancing both the mandatory and the allowable punishments. Against the more menacing of the drug conspirators, the Legislature moved on two fronts simultaneously.

Its first action was the passage of ch. 287 of the Acts of 1989, promulgating what are now subsections (f) and (g) of § 286. The new law was specifically referred to as Maryland's "Drug Kingpin Act." In subsection (f), the Legislature provided enhanced penalties for certain substantive violations of subsection (a)(1) where such violations involved specified quantities of specified drugs. Subsection (f)(3) then provided, by way of penalty enhancement, 1) a mandatory minimum of five years imprisonment, 2) the mandatory provision that no part of that five-year term might be suspended, and 3) the

mandatory provision that during that five-year period the prisoner would not be eligible for parole.

It was in subsection (g) that the Legislature moved against "drug kingpins" specifically. After defining a "drug kingpin," the Act specifically provided a series of enhanced penalties for a "drug kingpin who *conspires* to manufacture, distribute, dispense, bring into, or transport in the State controlled dangerous substances" in one or more of the amounts described under subsection (f). For such "drug kingpin" conspirators, 1) the maximum penalty was raised to forty years, 2) a mandatory minimum of twenty years imprisonment was imposed, 3) no part of the twenty-year term might be·suspended, 4) the twenty-year term at least would be without possibility of parole and the rest of the term might be, and 5) a fine of not more than one million dollars could be imposed. For the passage and the content of the Drug Kingpin Act, *see generally Williams v. State,* 329 Md. 1, 616 A.2d 1275 (1992) and *Waldow v. State,* 335 Md. 122, 642 A.2d 213 (1994).

Notwithstanding the enhanced penalties specifically spelled out by subsection (g)(2), there was still the lurking danger that some might argue that those provisions ran afoul of the sentencing "cap" provided for conspirators by § 290. It might have been argued that the maximum penalty could not be raised beyond the twenty-year maximum ordinarily provided for a violator of the substantive law against manufacturing, distributing, dispensing, etc. It might have been argued that § 290 limited punishment to "imprisonment or fine or both" and thereby precluded no-parole and no-suspension provisions. It might have been argued that if sentencing were to be done only under the limiting terms of § 290, no mandatory minima were permitted. To forestall such arguments before they could be made, ch. 287 of the Acts of 1989, which promulgated the "Drug Kingpin Act," also amended § 290 by adding at the beginning of the section the qualifying clause, "Except as provided otherwise under this subheading ..." Where the subsection otherwise deals with penalties for conspirators, as in subsection (g)(2), § 290 by its very terms does not apply.

Indeed, the sentencing of "drug kingpin" conspirators is not done under § 290 but under § 286(g)(2) directly.

What emerges from ch. 287 of the Acts of 1989 in its entirety is that when the Legislature wants specifically to provide enhanced penalties for drug conspirators, it knows how to do so expressly and does not rely on implication. Section 286(g) deals expressly with those "who conspire" to violate the drug laws. Subsection (f), created by the same legislative act, contains no such reference.

The other front on which the Legislature moved simultaneously against drug conspiracies was to deal with the special case of recidivistic drug conspirators. Subsections (c), (d), and (e) of § 286 had, prior to 1989, provided escalating sets of enhanced penalties for "two-time losers," "three-time losers," and "four-time losers," respectively. No enhanced penalties had been provided for "two-time losers," "three-time losers," and "four-time losers," respectively, who *conspired* to violate, in the prescribed manner, the substantive law. If the State were correct in its argument on this appeal, no such special provisions would have been necessary.

The Legislature, however, thought it necessary to enact ch. 679 of the Acts of 1989. Where each of the three subsections had theretofore been applicable only to an otherwise qualifying defendant who was "A person who is convicted under subsection (b)(1) or subsection (b)(2) of this section," they were expressly amended by adding the category "or of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section." The Legislature obviously deemed it necessary specifically to "provide otherwise" if it wanted the mandatory minima and other enhanced provisions to apply to conspirators. The Bill Analysis to the House Bill creating the amendment stated:

This bill *extends the mandatory minimum* sentences, and the applicable prohibition against suspending sentences or granting parole, *to persons who are convicted of conspiring* to manufacture or distribute the specified controlled dangerous substances after previously being convicted on one or

more manufacturing, distributing, or conspiring to distribute the specified controlled dangerous substances. (emphasis supplied).

If these enhanced penalties for substantive violations had already been implicitly available under § 290 for recidivistic conspirators, ch. 679 of the Acts of 1989 would have been a redundancy. We are not about to attribute to the Legislature the passage of an Act which it believed to be meaningless.

### Conclusion

We hold that § 290 does not incorporate into the sentencing available for conspirators enhanced penalty provisions for violations of substantive target crimes. Enhanced penalties are available for otherwise qualifying conspirators only if the law has "otherwise provided" enhanced penalties for such conspirators. In the overall scheme of § 286, there are five sets of enhanced penalties. Four of them—subsections (c), (d), (e), and (g)—specifically "otherwise provide" for convicted conspirators. One of them, subsection (f), does not. We hold, therefore, that the five-year no-parole condition imposed on the appellants in this case, ostensibly by virtue of § 290's implicit incorporation of § 286(f)(3), was an illegal sentence.

A remand for resentencing, however, is unnecessary. It is enough for us to vacate the no-parole provisions. Though the reasoning of this opinion would, in the abstract, apply to the other mandatory minima as well, the appellants have chosen only to argue with respect to the no-parole provision.

As far as the ostensibly mandatory five-year minimum sentences were concerned, the sentencing judge was obviously not constrained by such a provision. In the exercise of his discretion, he imposed sentences on the three appellants of fifteen years, twenty years, and twenty years, respectively. As far as the ostensibly mandatory no-suspension provision was concerned, the sentencing judge was also obviously not constrained by it. In the exercise of his discretion, he imposed on the three appellants non-suspended sentences of ten years, fifteen years, and ten years, respectively. In the last

analysis, however, the appellants have not argued with respect to these latter two mandatory minima.

*PROVISIONS IN THE SENTENCES THAT THE AP-PELLANTS WILL NOT BE ELIGIBLE FOR PAROLE FOR FIVE YEARS ARE VACATED; JUDGMENTS OTH-ERWISE AFFIRMED; COSTS TO BE PAID BY HOW-ARD COUNTY.*