901 A.2d 271

**Scott R. WYATT**

v.

**STATE of Maryland.**

**No. 2910, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

June 30, 2006.

---

Allen E. Burns, Glen Echo, for appellant.

Brian S. Kleinbord (J. Joseph Curran, Jr., Atty. Gen. on the brief), Baltimore, for appellee.

Panel: DAVIS, KENNEY and EYLER, DEBORAH S., JJ.

EYLER, DEBORAH S., J.

A jury in the Circuit Court for Montgomery County found Scott R. Wyatt, the appellant, guilty of possessing a regulated firearm after conviction of a "disqualifying crime," in violation of Md.Code (2003), section 5–133(b)(1) of the Public Safety Article ("PS"). He was sentenced to a one-year term of imprisonment.

On appeal, the appellant poses two questions for review, which we have reworded slightly:

I. Did the trial court err in ruling that his prior conviction was a "disqualifying crime" within the meaning of PS sections 5–101(g) and 5–133(b)(1)?

II. Was there sufficient evidence of possession of a regulated firearm to sustain his conviction?

For the following reasons, we shall affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

The State charged the appellant with possessing a regulated firearm after being convicted of a "disqualifying crime." PS § 5–133(b)(1). More specifically, the appellant was charged with possessing a regulated firearm after being convicted of "a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years." PS § 5–101(g).

The evidence at trial, viewed most favorably to the State, showed that, on February 28, 2004, the appellant was convicted of attempted felony theft (*i.e.*, attempted theft of property valued at more than $500). The record does not reveal when he was sentenced for that crime, or what the sentence was,

although all parties agree that he did not receive a sentence of more than two years' imprisonment.

On the evening of the day he was convicted, the appellant entered his mother's house and took, among other things, a .357 handgun that belonged to him. He had purchased the handgun legally in 1990. It was operational.

The appellant did not live in his mother's house, did not have a key to the house, and did not have permission to enter the house. When he entered his mother's house on February 28, 2004, his mother was out of state with her fiancé and one of the appellant's brothers. Another brother called her, which prompted her to call her house. The appellant answered the telephone. He told his mother he had hired a locksmith to let him in the house, and that he was there to pick up some of his things. His mother gave him permission to stay in the house just for the night.

The appellant's mother returned home the next day. She discovered several items missing, including the appellant's .357 handgun. She called the police and reported the gun stolen. She told the police that the appellant was renting a storage unit in Germantown.

On May 5, 2004, the police executed a search warrant for the appellant's storage unit. They found the .357 handgun, loaded, in the unit.

## DISCUSSION

### I.

The appellant contends that his conviction of possessing a firearm after being convicted of a "disqualifying crime," in violation of PS section 5–133(b)(1), must be reversed because his prior conviction of attempted felony theft is not a "disqualifying crime" within the meaning of that section and PS section 5–101(g).

A "disqualifying crime" is defined in PS section 5–101(g) as:

(1) a crime of violence;

(2) a violation classified as a felony in the State; or

(3) a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years.

■ As noted, the prior conviction in question was for attempted felony theft. Under Maryland law, an attempt to commit a crime is a common-law misdemeanor. *State v. North,* 356 Md. 308, 312, 739 A.2d 33 (1999) (stating that, "[u]nder Maryland common law, the attempt to commit a crime is, itself, a separate misdemeanor").

Because the appellant's prior conviction of attempted felony theft was not a violent crime and was not a felony, the State charged him under PS section 5–101(g)(3), that is, for being in possession of a regulated firearm after having been convicted of "a violation classified as a misdemeanor . . . that carries a statutory penalty of more than 2 years."

The statutory penalty for felony theft is "imprisonment not exceeding 15 years or a fine not exceeding $25,000 or both." Md.Code (2002), section 7–104(g)(1)(i) of the Criminal Law Article ("CL"). Pursuant to CL section 1–201, "[t]he punishment of a person who is convicted of an attempt to commit a crime may not exceed the maximum punishment for the crime attempted." *See also Johnson v. State,* 362 Md. 525, 530, 766 A.2d 93 (2001) (holding that attempt is a common-law inchoate offense "for which the General Assembly has limited the punishment to the maximum punishment provided for the substantive or target offense"). Thus, the appellant's prior conviction of attempted felony theft was a common-law misdemeanor, for which, pursuant to CL sections 1–201 and 7–104(g)(1)(i), the statutory penalty was "imprisonment not exceeding 15 years or a fine not exceeding $25,000 or both."

The appellant maintains that, under the plain language of PS section 5–101(g)(3), attempted felony theft is not a misdemeanor that carries a statutory penalty of more than two years. Specifically, he argues that a misdemeanor that "carries a statutory penalty of more than 2 years" is one that *mandates* the court to impose a penalty of more than two years' incarceration. The State reads the statutory language

differently. It maintains that a crime that carries a statutory penalty of more than two years is one that *allows* the court to impose a penalty of more than two years' incarceration. The circuit court agreed with the State's interpretation of the statutory language.

 We review a trial court's interpretation of a statute *de novo. Cain v. State,* 386 Md. 320, 327, 872 A.2d 681 (2005). Our goal in interpreting statutes is to "identify and effectuate the legislative intent underlying the statute[ ] at issue." *Id.* (internal quotations and citations omitted). The primary source of legislative intent is the statute's plain language. *Id.* Before we may look beyond the plain language of the statute to other sources for interpretation, there first must be an ambiguity within the statutory language; that is, "there must be two or more reasonable alternative interpretations of the statute." *Greco v. State,* 347 Md. 423, 429, 701 A.2d 419 (1997).

> The chief goal of statutory interpretation is to discover the actual intent of the legislature in enacting the statute, and the legion of cases that support this proposition need not be repeated here. In fact, all statutory interpretation begins, and usually ends, with the statutory text itself, for the legislative intent of a statute primarily reveals itself through the statute's very words. A court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application. In short, if the words of a statute clearly and unambiguously delineate the legislative intent, ours is an ephemeral enterprise. We need investigate no further but simply apply the statute as it reads.

*Price v. State,* 378 Md. 378, 387, 835 A.2d 1221 (2003) (internal citations omitted).

Relying primarily on *DeLeon v. State,* 102 Md.App. 58, 648 A.2d 1053 (1994), the appellant argues that attempted felony theft carries a statutory penalty of no more than 15 years in

prison—not a minimum statutory penalty of more than two years in prison—and therefore is not a "disqualifying crime" under PS section 5–101(g)(3). In *DeLeon*, three defendants were convicted of conspiracy to distribute heroin and sentenced to terms of imprisonment, the first five years of which were to be without parole. The defendants were arguing that their sentences were illegal because the sentencing court did not have authority to restrict parole.

We agreed with the defendants, holding that the statutes stating that a punishment for the crime of conspiracy "shall not exceed the punishment for the offense [the defendant] conspired to commit"[1] place a cap on the sentencing court's otherwise unfettered common-law sentencing discretion; they do not, however, incorporate any mandatory minimum sentencing requirement, such as a restriction on parole. We explained:

> In a very fundamental sense, neither [of the conspiracy statutes limiting punishment to the maximum penalty for the target offense] do anything to the possible sentence for conspiracy other than impose a ceiling on the trial judge's otherwise open-ended common law sentencing discretion. The conspiracy sentencing provisions and the substantive crime sentencing provisions are linked only at their upper ends, not at their lower ends. To legislate as to the ceiling is not to legislate as to the floor. A sentencing provision that provides only that a sentence *"may not exceed the maximum"* provided for something else clearly does not incorporate any minimum or mandatory provisions provided for that something else.

102 Md.App. at 67, 648 A.2d 1053 (emphasis in original).

The appellant reasons, by analogy, that the statute that limits a sentence for attempt to the maximum sentence that could be imposed for the target crime does not also limit the sentencing court's discretion by incorporating a mandatory minimum sentence; and because (in appellant's view) the

---

1. *See* Md.Code, Art. 27, § 38 (current version at CL § 1–202).

phrase "a violation classified as a misdemeanor ... that carries a statutory penalty of more than 2 years" means a mandatory minimum sentence of more than two years, the statutory sentence for his prior misdemeanor conviction was not more than two years. Hence, the crime was not a "disqualifying crime."

The State argues that the language of PS section 5–101(g)(3) can only reasonably be read to mean that a "violation classified as a misdemeanor ... that carries a statutory penalty of more than 2 years" is one for which, by statute, the court is *authorized*—but not necessarily *required*—to impose a penalty of more than two years in prison.

The appellant is correct that, as Judge Moylan thoroughly explained in *DeLeon,* a statutory limitation upon the upper end of the court's sentencing discretion by no means creates a limitation upon the lower end of the court's sentencing discretion. "To legislate that an otherwise discretionary sentence may not go above some designated maximal point does not even imply, let alone unequivocally state, that such discretion may not go below some designated minimal point." *DeLeon, supra,* 102 Md.App. at 67, 648 A.2d 1053. By restricting the court's discretion in sentencing for the crime of attempt to the limit of the sentence that can be imposed for the crime attempted, the General Assembly did not impose a minimum mandatory sentence for attempt. That is a material point, however, only if the statutory language in question—"a violation classified as a misdemeanor ... that carries a statutory penalty of more than 2 years"—means that the statutory penalty must be at least more than two years. If the language simply means that the court may impose a sentence of at least two years, because 15 years is the maximum and two years falls within it, the holding in *DeLeon* is not of consequence here.

The issue before us thus becomes whether the phrase "carries a statutory penalty of" is ambiguous. If not, we look to the usual and ordinary meaning of those words; and, if so, we determine whether the rule of lenity compels the

meaning the appellant ascribes to it, as that meaning is most favorable to him. Whether the words of a statute are ambiguous, *i.e.*, subject to two reasonable, alternative meanings, is a question of law. *Moore v. State*, 388 Md. 446, 452–53, 879 A.2d 1111 (2005). We conclude that the statutory language at issue here is not ambiguous.

■ The usual and ordinary meaning of the phrase "carries a penalty of ...," when referring to a crime, is that the penalty is one the defendant may be subjected to if found guilty, not one he must be subjected to if found guilty. The Court of Appeals recognized this, implicitly, in *Melton v. State*, 379 Md. 471, 842 A.2d 743 (2004). There, the defendant was convicted of possessing a regulated firearm after being convicted of a felony; of possessing a regulated firearm after being convicted of a crime of violence; and of possessing a regulated firearm after being convicted of a misdemeanor that carries a statutory penalty of more than two years.

The defendant's convictions all arose out of a single incident in which he possessed a regulated firearm. It so happened that he had a prior conviction of a felony, another prior conviction of a crime of violence, and yet a third prior conviction of a misdemeanor that carries a statutory penalty of more than two years. The Court held that the rule of lenity applied and that the defendant could not be convicted of three counts of possessing a regulated firearm arising out of a single act of possession.

The defendant's prior conviction of a misdemeanor that carries a statutory penalty of more than two years was a second degree assault conviction. Second-degree assault is a common-law misdemeanor that also is prohibited by CL section 3–203(a). Subsection (b) of that statute, entitled "Penalty," provides: "A person who violates this section is guilty of the misdemeanor of assault in the second degree and on conviction is subject to imprisonment not exceeding 10 years or a fine not exceeding $2,500 or both."

Implicitly, the Court of Appeals in *Melton* accepted that a misdemeanor that *subjects a convicted defendant to* imprison-

ment not exceeding 10 years is a misdemeanor *that carries* a penalty of more than two years in prison. In other words, so long as it is possible for the defendant to be imprisoned for more than two years for his misdemeanor, the misdemeanor is one that carries a penalty of more than two years in prison.[2] The Court's working assumption reflects the ordinary meanings of the phrases "is subject to" and "carries a penalty of" in sentencing: that a person "is subject to" a penalty, which can be imprisonment not exceeding a certain number of years, and the crime the person is charged with is one that "carries a penalty" of up to that number of years. One phrase describes the person and the other describes the crime. Both convey the concept that the court *may* impose a penalty of up to the statutory limit, not that the court *must* impose a certain minimum penalty.

Indeed, when a statute imposes a minimum mandatory sentence, it is said to "carry a *minimum* sentence" or "carry a *mandatory* sentence"—not "carry a sentence of"—that number of years. *See, e.g., Harris v. State,* 353 Md. 596, 625, 728 A.2d 180 (1999) (stating that unauthorized use "carries a minimum penalty of six months and a maximum penalty of four years"); *Spitzinger v. State,* 340 Md. 114, 128, 665 A.2d 685 (1995) (observing that the robbery in that case was a subsequent offense "carrying a mandatory sentence of 25 years"); *Nicholson v. State,* 157 Md.App. 304, 306, 850 A.2d 1204 (2004) (explaining that the defendant agreed to plead guilty to a drug kingpin charge that "carried a minimum sentence" of 20 years); *Hernandez v. State,* 108 Md.App. 354, 355, 672 A.2d 103 (1996) (stating that the drug kingpin offense is one "carrying a minimum mandatory ... sentence of 20 years"); *Lee v. State,* 36 Md.App. 249, 250, 373 A.2d 331 (1977) (pointing out that a certain handgun charge "carried a mandatory minimum five-year sentence").

---

**2.** The *Melton* Court was addressing the statutory language in the predecessor statute to PS section 5–101(g). That statute, Md.Code, Art. 27, section 449, was recodified in 1993.

Under PS section 5–101(g)(3), the appellant's prior conviction for attempted felony theft was a conviction of a misdemeanor for which, by statute, he could have been subjected to a prison term of more than two years, *i.e.*, a misdemeanor that "carries a sentence of more than 2 years." Accordingly, the trial court did not err by ruling that the appellant could be found criminally liable for possessing a regulated firearm after conviction of a "disqualifying crime."

## II.

The appellant also contends that the evidence was insufficient to support a finding that he was *in possession* of a regulated firearm, namely, the .357 handgun. (He does not dispute that the handgun is a regulated firearm.)

The appellant's mother testified that the keys to the appellant's storage unit were kept in a desk drawer in her house. The keys were not in the desk drawer when the appellant's mother, her fiancé, and the appellant's brother, Tod, returned from their out-of-state trip on February 29. When asked whether the keys could have been missing before February 27 (the night they left for their trip), the appellant's mother testified that only she, her fiancé, and Tod had been in the house then. She and her fiancé testified that they both had last seen the handgun at the house the night they left for their trip. Tod did not testify.

The appellant argues that, on this evidence, and without any additional evidence, the State did not eliminate the possibility that Tod removed the keys to the storage unit and the handgun from their usual locations in the house and hid them somewhere before he, his mother, and her fiancé went on their trip. He points out that Tod "may well have known" that he (the appellant) "could be released the next day" (presumably from prison); and, because Tod was a member of the military and about to be deployed to Iraq, he might have been interested in carrying a weapon such as the .357 handgun for protection.

The appellant further emphasizes that other items found missing from the house at the same time—including speed loaders and computer hard drives—belonged to Tod, and therefore Tod might have taken them (even though he reported them missing to the police). Also, in a telephone call on February 29, the appellant offered to return the hard drives to Tod. Therefore, he theorizes,

> Perhaps [the appellant] had then given [the items] and his suitcase to Tod, and he [Tod] was the one who had placed them in the storage unit, leaving the plastic-encased gun and bullets concealed in a separate bag there for future retrieval. Tod might have been unable to pick them up, he might eventually have thought better of trying to take them with him to Iraq, or, knowing of the ongoing police investigation, he might have feared that if he tried to retrieve them, he would be caught.

The problem with this argument is that it entirely disregards the standard of review of the sufficiency of the evidence to support a criminal conviction. Evidence is sufficient to support a criminal conviction if, when viewed most favorably to the State as the prevailing party, any rational trier of fact could find against the defendant as to each element of the crime, beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Suddith*, 379 Md. 425, 429, 842 A.2d 716 (2004).

The appellant's argument interprets the evidence in the light most favorable to him, not to the State. Relying on numerous favorable inferences from the facts, he spins a theory from circumstantial evidence that, if believed, could support a finding that Tod, not he, removed the handgun from their mother's house to the storage unit, and hence the further finding that the appellant was never in possession of the handgun. Of course, the jurors were free to reject all or some of the many inferences upon which the appellant's theory rests, and to discredit all or some of the evidence underlying those inferences.

The State's burden is not to disprove every possible interpretation of the evidence that is favorable to the defendant. It is to prove the elements of the crime beyond a reasonable doubt. The evidence interpreted favorably to the State supported a finding, beyond a reasonable doubt, that the appellant was in possession of the .357 handgun, an element of the crime for which he was on trial. The handgun in question belonged to the appellant, but was being kept at his mother's house. The appellant's mother and her fiancé saw the handgun in her house the day before they went on an out-of-state trip. The next day, the appellant's mother called her house and the appellant answered the telephone, stating that he was there to retrieve some things. When the mother and her fiancé returned to the house the next day, the gun was missing. The key to the appellant's storage unit, which usually was kept in the drawer of a desk in the house, also was missing. The handgun then was found by the police in the appellant's storage unit. Tod was with his mother and her fiancé during their out-of-state trip.

From this evidence, reasonable jurors could conclude that the appellant went to his mother's house when she was gone, took his handgun and the key to his storage unit, and then went to the storage unit and placed the gun inside. The State was not required to rule out the possibility that Tod took his brother's handgun and the keys to his brother's storage unit from their mother's house and then took the handgun to the storage unit and left it there.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**