4 A.3d 515

CENTRAL TRUCK CENTER, INC., et al.

v.

CENTRAL GMC, INC., et al.

No. 1780, Sept. Term, 2008.

Court of Special Appeals of Maryland.

Sept. 7, 2010.

376

378

Brian D. Lyman (Michael P. Darrow, Marietta B. Warren, Hillman, Brown & Darrow PA, on the brief) Annapolis, MD, for appellant.

Kenneth S. Nankin (Nankin & Verma PLLC, on the brief) Rockville, MD, for appellee.

Panel: EYLER, JAMES R., KEHOE and J. FREDERICK SHARER (Retired, Specially Assigned), JJ.

J. FREDERICK SHARER, J. (Retired, Specially Assigned).

This appeal arises from the grant of summary judgment by the Circuit Court for Prince George's County in favor of appellees, Central GMC, Inc. and Burgess–Katz, LLC, ("Central GMC") on claims of fraud, concealment, and negligent misrepresentation, asserted by appellants, Central Truck Center, Inc. and 3839 Ironwood Place, LLC ("Central Truck"). All of the claims and disputes in this litigation relate to a contract for the sale of a truck dealership by Central GMC to Central Truck.

Appellants' question to this Court, which we have rephrased slightly, is:

Did the trial court err by granting summary judgment in favor of appellees on appellants' claims of fraud, concealment, and negligent misrepresentation by enforcing an integration clause in a contract whose execution was arguably induced by the alleged fraud, concealment, and misrepresentation?

Central GMC filed a cross-appeal based on the trial court's overall net judgment entered with respect to the parties' contract-based claims and counterclaims, and asks us to consider:

Whether the trial court erred in calculating the overall net judgment with respect to the parties' contract based claims and counterclaims?

Finding neither error nor abuse of discretion, we shall affirm the judgments.

## FACTS and PROCEEDINGS

In January 2006, the parties entered into an Asset and Real Estate Purchase Agreement (the "Agreement"), whereby Central GMC agreed to sell, and Central Truck agreed to buy, certain truck dealership assets and associated real property then owned by Central GMC. In its complaint, filed in December 2006, Central GMC averred that following the May 1, 2006 closing of the sale, Central Truck materially breached the terms of the Agreement by failing to pay the full settlement amount—leading to a $44,700 shortfall of the purchase price—and by failing to fulfill certain other requirements set forth in the Agreement. Central GMC further alleged that Central Truck had failed to account for money and/or property owed to Central GMC.[1]

Ultimately, by way of its fourth amended counterclaim, Central Truck alleged causes of action for breach of contract, fraud, concealment, and negligent misrepresentation by Central GMC and its principals, based, in part, on its claim that, following the purchase of the truck dealership, its income during the summer months of 2006 was considerably less than anticipated, given Central GMC's sales history. It was those figures, Central Truck alleged, upon which it relied in negotiating a price for the purchase of the dealership. This shortfall, Central Truck contended, was due to an inaccuracy in Central GMC's financial statements, resulting in large part from the cancellation of a contract between Central GMC and the District of Columbia Public Schools ("DCPS").[2] Central Truck asserted that the proceeds of the DCPS contract had

---

1. But for Central GMC's contention that the trial court's overall judgment was incorrect, these claims are not addressed in the parties' briefs, and we address them here only to present the relevant factual predicate for the litigation.

2. The contract between Central GMC and DCPS provided that Central GMC would provide parts, service, and repairs to DC school buses. The particulars of the contract are not provided in the record extract.

inflated Central GMC's sales and service figures prior to the closing of the sale in May 2006. Central Truck averred that Central GMC had overbilled DCPS for parts and service and used the overbilled figures to enhance gross receipts and, hence, inflate the value of the truck dealership. Central Truck said it relied upon those figures in settling on the purchase price for the dealership as a going concern.

On April 18, 2008, Central GMC responded to Central Truck's fourth amended counterclaim by filing its second amended motion for summary judgment. Therein, Central GMC argued that the Agreement constituted a complete integration of the terms of the contract and did not provide for any representations or stipulations to Central Truck as to a continuation of Central GMC's past income.[3] Central GMC further asserted in its motion that the Agreement explicitly notified Central Truck that, while attempted collection of accounts receivable from DCPS on a contract that expired in September 2005 was continuing, DCPS had disputed the claim. Central GMC also noted in its motion that the DCPS contract represented income only to Central GMC and not to Central Truck, as the DCPS contract expired in September 2005, well before the effective date of the Agreement. Thus, Central GMC's argument continued, given the expiration of the DCPS contract in 2005, and the fact that the Agreement granted Central GMC retention of its right to collect its accounts receivable, Central Truck could not claim that it had an expectation of income from DCPS on the expired contract. Central GMC further contended that Central Truck was aware, by virtue of Schedule 5.1.7 to the Agreement, that the

---

**3.** The integration clause was contained in section 15.3 of the Agreement and provided, in pertinent part:

> This Agreement along with the schedules and exhibits attached hereto and to be attached hereto at Closing sets forth all of the promises, covenants, agreements, conditions and understandings between and among Central [GMC] and BKLLC and Buyer [Central Truck] with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, express or implied, oral or written, with respect hereto, except as contained herein.

DCPS had notified Central GMC of its intent to conduct an audit of the parts and service department provided on its account.[4]

Therefore, Central GMC argued, it was entitled to summary judgment as to the fraud, concealment, and negligent misrepresentation claims, as no material facts were in dispute. Moreover, in its view, Central Truck had not demonstrated the requisite intent and scienter on the part of Central GMC to prove its claims of fraud and concealment.

On August 29, 2008, the trial court (Hon. Sean D. Wallace) ruled on the fraud, negligent misrepresentation, and concealment issues in Central GMC's motion for summary judgment,[5] as follows:

THE COURT: .... That leaves the remaining issues, which are the fraud, negligent misrepresentation, and concealment issues. Again, and as Mr. Lyman [Central Truck's attorney] characterized it, essentially varieties and flavor of the fraud and the inducement type of claim.

Again, the defendant has to show by clear and convincing evidence that there was false representations [sic] and that they were made with the intent that the defendant rely on them and the defendant did rely on them. The problem for me the[n], and Mr. Lyman has gone to great lengths to try to convince me otherwise, but it seems to me the problem for the[m] is the integration clause, which says that this agreement sets forth all promises and understanding and supercedes any prior agreements, understandings, or inducements.

So there may be some factual issues as to whether or not Mr. Burgess [Central GMC's principal] made the factual

---

4. Schedule 5.1.7, "Central Actions, Suits, Proceedings," provided:
 "Central [GMC] has a contract to repair school buses for the District of Columbia Public Schools. The District of Columbia Government has notified Central that it they [sic] intend to conduct an audit of the parts and service provided with respect to this open account."

5. All the other outstanding issues had either been settled among the parties or decided at a June 9–11, 2008 court trial.

representations, but the bottom line is, by the time they got it all down on paper, they were saying the ones that we're attaching here are the representations and the inducements and understandings that exist. Anything else, it's all forgotten.

And I understand defendant's argument is it's Mr. Keyton's [Central Truck's principal] position that he priced this based on his review of the books and accounts and records, and the price would have been lower if he had realized what he now knows or what he now claims to know. But the fact is, he didn't ask for any of that to be included in the agreement. It was very simple for him to have said, and also, we do attach as a schedule, or reference as part of a schedule, all the books and records that were provided to us. And they are an integral part of this agreement, and they weren't an inducement that we relied on. Instead, he did the contrary.

Furthermore, there's no evidence in the record that I could find on the summary judgment that the plaintiff made false representations and, moreover, that he intended to act, he intended the defendant to act in reliance on these. These are books and records and accounts which were in existence, obviously, long before the agreement and long before the agreement was contemplated.

And then, finally, the D.C. Schools issues was [sic] disclosed to the defendant and that's undisputed. What's disputed is how much they should have disclosed the characterization of that, and he's saying that it was an audit. The defendant characterizes it as an investigation. The fact is they did let the defendant know that D.C. Public Schools was looking into the billing and the accounts, and so the defendant was on notice that that was an issue.

I don't find, in light of that, that there is sufficient evidence, especially clear and convincing evidence, that the plaintiff intended to defraud the defendant as to the nature of that D.C. Public Schools account, which had terminated again under any analysis. It's undisputed that it had terminated in September of 2005. Of course, the question in

dispute is whether it should have and how was it terminated and if it expired. Was it terminated by the D.C. upon the findings of some problems? Nonetheless, it was over before this, months and months and months before the closing.

So based on all those things, I find as a matter of law that there's insufficient evidence to rise to the level of clear and convincing evidence that the plaintiff engaged in fraud, concealment, or negligent misrepresentation. So for those reasons, I'm going to grant the motion for summary judgment as to those claims.

I believe that resolves all the issues that are before me. Does anybody think there's anything else out there?

[COUNSEL FOR CENTRAL GMC]: Your Honor, just for the point of clarification as to the Court's ruling on the motion for summary judgment, the Court has indicated that there's insufficient clear and convincing evidence, but under 2–501 did the Court find that there are material facts is [sic] dispute that would lead to that?

THE COURT: I don't find that there are any material facts that are in dispute. I acknowledge that there appear to be factual disputes, although I do note that the affidavit doesn't conform with the rule. The affidavit upon information and belief doesn't conform with the rule. What I'm saying is even if that affidavit were in conformity with the rules and that it was based on personal knowledge, any factual disputes generated as a result are not material to the ruling that I have made.

The trial court additionally ruled that, based on all the disputes alleged in the complaints and counterclaims, Central GMC owed Central Truck damages in the amount of $1,197.11.

Judgment was entered on September 18, 2008. Central GMC filed a motion to alter or amend the judgment, alleging that the trial court's damage calculations were incorrect, in that all amounts it owed to Central Truck had been paid and, in fact, Central Truck owed Central GMC $44,516.73. The court denied the motion on December 2, 2008.

Central Truck noted its appeal from the grant of Central GMC's motion for summary judgment on September 22, 2008. Central GMC noted its cross-appeal from the judgment, and from the trial court's denial of its motion to alter or amend the judgment, on December 11, 2008.

Additional facts will be set forth as necessary.

## DISCUSSION

### I. Central GMC's Motion for Summary Judgment

Appellant, Central Truck, contends that the trial court erred in granting summary judgment on the fraud, concealment, and negligent misrepresentation counts of its fourth amended counterclaim.

■ Central Truck puts forth several arguments. First, it argues that in granting the motion for summary judgment, the trial court employed the incorrect standard in evaluating the claims [6] and wrongly concluded there was no dispute of material fact. Central Truck further alleges that the trial court improperly relied on the Agreement's integration clause to foreclose argument on the fraud, concealment, and negligent misrepresentation tort claims. Central Truck urges us to evaluate the tort claims on their own merits, separate from the contractual duties and remedies, asserting that it was improperly induced into executing the Agreement by false and/or

---

6. We quickly dispatch Central Truck's claim that the trial court employed the incorrect standard in granting the motion for summary judgment. Central Truck alleges that the trial court erroneously applied the "clear and convincing evidence" standard in granting the fraud-based claims in the motion, rather than considering all facts in a light most favorable to the non-moving party, *i.e.*, Central Truck. Central Truck mischaracterizes the court's ruling. To prevail on a fraud-based claim, a party must prove each element of the fraud by clear and convincing evidence. *VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 704, 715 A.2d 188 (1998). The trial court simply ruled that Central Truck had failed to prove all the elements of the fraud-based claims by clear and convincing evidence; thus, even resolving all factual matters in Central Truck's favor, the court was constrained to find that Central Truck's fraud-based claims would fail as a matter of law.

inadequate representations by Central GMC. In short, Central Truck argues that the integration clause cannot be applied to thwart its tort claims.

Central GMC counters that the trial court correctly ruled that the integration clause barred the court's consideration of any document outside the four corners of the Agreement, including the financial statements that Central Truck alleged fraudulently induced it to enter into the Agreement. Thus, it concludes, the tort claims fail. Furthermore, Central GMC contends that the trial court correctly ruled that the record does not support a finding that Central GMC made any false representations to Central Truck related to the financial statements. Finally, Central GMC argues that the grant of summary judgment was proper because the trial court correctly concluded that any reliance Central Truck might have made on representations by Central GMC, as it related to the DCPS contract, was unjustifiable because Central GMC had given Central Truck adequate notice of the DCPS audit prior to execution of the Agreement. Therefore, the argument continues, Central Truck could not have justifiably relied on any representations or concealments concerning Central GMC's sales to DCPS.

## Summary Judgment—Standard of Review

The entry of summary judgment is governed by Md. Rule 2–501, which provides, in pertinent part:

(f) **Entry of judgment.** The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

Summary judgment is appropriate if "the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.' " *Berger v. U.S.*, 87 F.3d 60, 65 (2d Cir.1996) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In considering a trial court's grant of a

motion for summary judgment, this Court seeks to determine whether any material facts are in dispute, and, if they are, we resolve them in favor of the non-moving party, in this case, Central Truck. *Bednar v. Provident Bank of Md., Inc.,* 402 Md. 532, 542, 937 A.2d 210 (2007).

 If no material facts are in dispute, the appellate court must determine whether the trial court correctly entered summary judgment as a matter of law. *Anderson v. Council of Unit Owners of The Gables on Tuckerman Condominium,* 404 Md. 560, 571, 948 A.2d 11 (2008). In addition, it is the "established rule of Maryland procedure that, 'in appeals from grants of summary judgment, Maryland appellate courts, as a general rule, will consider only the grounds upon which the [trial] court relied in granting summary judgment.' " *Lovelace v. Anderson,* 366 Md. 690, 695, 785 A.2d 726 (2001) (quoting *PaineWebber v. East,* 363 Md. 408, 422, 768 A.2d 1029 (2001)).

 In reviewing a trial court's grant of summary judgment, we examine " 'the same information from the record and determine the same issues of law as the trial court.' " *La Belle Epoque, LLC v. Old Europe Antique Manor,* 406 Md. 194, 209, 958 A.2d 269 (2008) (quoting *Miller v. Bay City,* 393 Md. 620, 632, 903 A.2d 938 (2006)). We look only to the evidence submitted in opposition to, and in support of, the motion for summary judgment in reviewing the trial court's decision to grant the motion. *Id.* Central Truck alleges that it relied on Central GMC's past sales figures and false representations in Central GMC's financial statements, which included inflated sales and service figures related to the DCPS contract, in assessing the value of Central GMC as a going concern. Moreover, Central Truck claims the fact that its income during the summer months of 2006 was less than anticipated was due to the inaccuracy in Central GMC's financial statements, resulting in large part from Central GMC's overbilling of DCPS which, in turn, led to the cancellation of the DCPS contract.

Central GMC, of course, disagrees and argues that the trial court's grant of summary judgment was based on a record in which there was no evidence of false representations in its financial statements. Furthermore, Central GMC argues, any reliance Central Truck might have placed on representations by Central GMC, as they related to the DCPS contract, was unjustifiable because Central GMC had given Central Truck adequate pre-Agreement notice of the DCPS audit. Finally, Central GMC contends that the trial court correctly ruled that the tort claims, as well as contract claims, were barred by the integration clause.

We conclude that the trial court correctly granted summary judgment to Central GMC on Central Truck's claims of fraud, concealment, and negligent misrepresentation, as Central Truck has failed to make a sufficient showing of essential elements of its fraud-based claims. Specifically, Central Truck did not show that Central GMC made any false representations, that it justifiably relied on any such representations, or that it suffered compensable injury resulting from the representations.

### A. Fraud

Under Maryland law, the elements of a fraud claim are:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Gourdine v. Crews*, 405 Md. 722, 758, 955 A.2d 769 (2008). A plaintiff must present clear and convincing evidence of each element in its claims. *Id.* at 758–59, 955 A.2d 769.

### 1. False Representations

The trial court ruled, in part:

Furthermore, there's no evidence in the record that I could find on the summary judgment that the plaintiff made false representations and, moreover, that he intended to act, he intended the defendant to act in reliance on these. These are books and records and accounts which were in existence, obviously, long before the agreement and long before the agreement was contemplated.

■ The trial court found no evidence that Central GMC made any false representations to Central Truck with regard to the status of the DCPS contract or its financial statements, nor that Central GMC intended that Central Truck would act in reliance on any such representations. The court found, correctly, that the DCPS contract, books, and records were found to be in existence long before the Agreement was contemplated. We agree with the trial court that there is no evidence that Central GMC's principals made any representations, fraudulent or otherwise, to Central Truck regarding the financial statements or their accuracy.[7]

Schedule 5.1.7 clearly put Central Truck on notice of the existence of the pending DCPS audit. Central Truck does not dispute that it received such notice but argues that, despite its knowledge of the audit and the possibility or certainty of cancellation of the DCPS contract before Central Truck took ownership of the dealership, Central GMC somehow represented that Central Truck could expect the same income as Central GMC had enjoyed while the DCPS contract was in force.

---

**7.** Indeed, Central Truck's attorney appeared to concede as much at the summary judgment hearing:

THE COURT: Okay. Can you show me where it says that Burgess [Central GMC's principal] represented to him [Mr. Keyton, Central Truck's principal] that these books were accurate representations? [COUNSEL FOR CENTRAL TRUCK]: I think maybe it falls to a default in that Burgess had a duty to disclose the facts of the business and one of the Central—
THE COURT: Where does that come from?
[COUNSEL]: I believe that duty is just in the general good faith and fair dealing in negotiating arm's length contracts, Your Honor.

We do not follow the logic of Central Truck's argument. Central GMC made no representation, fraudulent or otherwise, about likely income Central Truck could expect from the DCPS contract. Nor did Central GMC, on the record before us, warrant the validity of its financial statements or their relevance to Central Truck's future enterprise. Central GMC merely provided its financial statements, the same ones relied upon by Central GMC in the course of its own operation of the dealership, to Central Truck, at the latter's request.

There was no evidence adduced by Central Truck that Central GMC ever represented the statements as accurate, and, while Central GMC may or may not have overbilled DCPS—a point not proven on the record—Central Truck knew or should have known that Central GMC's contract with DCPS would end prior to the implementation of the Agreement. Central Truck, therefore, had no reasonable expectation that revenues from DCPS, inflated or otherwise, would continue into its ownership of the dealership. Central GMC did not represent the facts otherwise. The trial court did not find that Central GMC made any misrepresentation to Central Truck related to sales figures, and, based on the record before us, we find no error in that assessment.

## 2. Reasonable reliance

Central Truck alleges that it relied on Central GMC's financial statements in evaluating and approving the purchase price. As noted, the financial statements at issue were not prepared in anticipation of the parties' negotiations. Rather, they were the financial statements prepared and utilized by Central GMC in the ongoing course of its business. Central Truck asked to view the statements, but it did not take further action to verify or question the numbers prior to entering into the Agreement, even in light of its undisputed knowledge that a DCPS audit was in the offing. Before us are Central Truck's owners/partners, sophisticated businesspeople represented in a million dollar-plus transaction by experienced legal and financial professionals. We cannot see, as the trial court did not, that Central Truck could reasonably have relied on

the financial statements of past performance as a guarantee of future performance.

 Further, the Agreement contained an integration clause, which explicitly superseded all prior and contemporaneous agreements, understandings, inducements, or conditions. The Agreement itself was lengthy and detailed, and no doubt the product of considerable negotiation and bargaining by sophisticated businesspeople represented by experienced advisors. As such, Central Truck's alleged reliance on extracontractual documents was unreasonable, and the failure of Central GMC to disclose more details of the DCPS issue than it did was immaterial.

 The financial statements were not incorporated into the Agreement. Were they as important to Central Truck's decision-making process as it claimed, it had every reason to seek incorporation into the Agreement but, for whatever reason, it did not. As noted in *One–O–One Enterprises, Inc. v. Caruso*, 848 F.2d 1283, 1287 (D.C.Cir.1988), "[o]n a matter of such large significance to the parties' bargain, silence in a final agreement containing an integration clause—in the face of prior explicit representations—must be deemed an abandonment or excision of those earlier representations." Central Truck cannot overcome the written instrument and, particularly, the integration clause

> by invoking the fraud-in-the-inducement exception to the parol evidence rule. The exception for a party who has been induced by a fraudulent misrepresentation to enter the contract must not be stretched or inflated in a way that would severely undermine the policy of the parol evidence rule, which is grounded in the inherent reliability of a writing as opposed to the memories of contracting parties.

*Id.* (internal quotations and citations omitted).

*One–O–One* involved long, contentious, and complicated multi-party negotiations regarding the sale of several properties constituting a restaurant franchise. Agreement was ultimately reached and memorialized in writing. One–O–One filed suit against other parties to the agreement, alleging

breach of contract and other actions. In granting defendants' motion to dismiss, the United States District Court for the District of Columbia observed:

> After eight months of vigorous negotiations, the parties reached a final agreement that was lengthy, detailed and comprehensive. During these eight months many offers, promises and representations were made.... To avoid a misunderstanding and to make clear that the only understanding between the parties was that expressed in the Agreement, the parties agreed that the Agreement "*supersede[d] any and all previous understandings and agreements.*" ... Even if Sullivan and Caruso had previously agreed not to divest their interest in Tenly, the Agreement explicitly superseded the previous representations. Therefore, when the representations were superseded by the Agreement there was no representation upon which plaintiffs could [reasonably] base a fraud claim.

*One–O–One Enters., Inc. v. Caruso,* 668 F.Supp. 693, 698 (D.D.C.1987) (emphasis in original).

Affirming, the United States Court of Appeals, District of Columbia Circuit (Ruth Bader Ginsburg, J.) noted: "Were we to permit plaintiff's use of the defendants' prior representations (and defendants' nondisclosure of negotiations inconsistent with those representations) to defeat the clear words and purpose of the Final Agreement's integration clause, 'contracts would not be worth the paper on which they are written.'" *One–O–One,* 848 F.2d at 1287 (quoting *Tonn v. Philco Corp.,* 241 A.2d 442, 445 (D.C.1968)).

Particularly cogent, relative to the facts before us in this appeal, is the court's observation:

> We have here the case of "a party with the capacity and opportunity to read a written contract, who [has] execute[d] it, not under any emergency, and whose signature was not obtained by trick or artifice"; such a party, if the parol evidence rule is to retain vitality, "cannot later claim fraud in the inducement."

*Id.* (quoting *Management Assistance, Inc. v. Computer Dimensions, Inc.,* 546 F.Supp. 666, 671–72 (N.D.Ga.1982), *aff'd sub nom. Computer Dimensions v. Basic Four,* 747 F.2d 708 (11th Cir.1984)).

Central Truck had the capacity and opportunity to read and understand the Agreement, which it executed with no evidence of "trick or artifice." Therefore, Central Truck, "if the parol evidence rule is to retain vitality, 'cannot later claim fraud in the inducement.'" *Id.* (quoting *Management Assistance, Inc.,* 546 F.Supp. at 671–72).

This rationale applies in the instant case, as well. If the information in the financial statements was of "such large significance to the parties' bargain," it was unreasonable of Central Truck not to insist they be incorporated into the Agreement. While we do not hold that an integration clause *bars* a claim of fraud based on pre-contractual representation in every instance, we do hold that the integration clause in the Agreement, together with the evidence of the unreasonableness of Central Truck's reliance, in combination with the other evidence, defeated the fraud-based claims asserted by Central Truck in its counterclaim.

## 3. Injury

Were we to assume for the sake of argument that Central GMC misrepresented its sales figures, and Central Truck justifiably relied on that misrepresentation, Central Truck did not present clear and convincing evidence of any compensable injury as a result. Central Truck alleges simply that it paid more for the goodwill of the business than it was worth, and that its sales figures for the summer months of 2006 were less than expected, given the inflated past sales figures Central GMC had provided.

Central Truck is certainly not the first purchaser to believe that it paid too much. Buyers remorse is not a rarity; nor is it a ground for relief. The value of goodwill, by its very nature, is not easily quantifiable, and Central Truck's bald statement that it paid more than Central GMC's goodwill was

worth is neither persuasive nor probative. In addition, data relating to sales for the first three months of new ownership of a going concern will not necessarily provide the benchmark upon which to base the adequacy of expected sales. Many reasons may be assigned to explain why a new owner of an established business might not match the revenues of the previous owner. To choose one, or a few, from the realm of possibilities requires speculation.

Nor can Central Truck logically base its allegation of injury on Central GMC's prior sales that included the DCPS business, as that contract undisputedly ended in September 2005, four months prior to the parties' Agreement. Central Truck had no claim to those revenues and could not justifiably claim injury as a result of not realizing that revenue. The record does not support a finding that the shortfall of Central Truck's sales figures, as compared to those of Central GMC for a similar time period, is the result of any unfulfilled promise by Central GMC. Central Truck's claim of injury based on lower than anticipated revenues, in its first three months in business, was entirely speculative and thus totally insufficient to raise any genuine issue of fact.

## B. Concealment and Negligent Misrepresentation

To prove any of its asserted tort claims—fraud, concealment, or negligent misrepresentation—the burden rested with Central Truck to prove that it justifiably relied on a misrepresentation by Central GMC, and suffered compensable injury as a result. *See Gourdine,* 405 Md. at 758, 955 A.2d 769; *Lloyd v. General Motors Corp.,* 397 Md. 108, 138, 916 A.2d 257 (2007) (Essential elements of fraudulent concealment are: duty from defendant to plaintiff to disclose a material fact; failure by defendant to disclose material fact; defendant's intent to defraud or deceive plaintiff; plaintiff took action in justifiable reliance on concealment; and plaintiff suffered damages as a result of concealment); *Lloyd,* 397 Md. at 135–36, 916 A.2d 257 (Essential elements of negligent misrepresentation are: defendant, owing a duty of care to plaintiff, negligently asserts a false statement; defendant intends plain-

tiff will act upon statement; defendant knows plaintiff will probably rely on statement, which, if erroneous, will cause loss or injury; plaintiff justifiably takes action in reliance on statement; and plaintiff suffers damage proximately caused by defendant's negligence).

 As we apply those standards to the evidence before the trial court, we conclude, as did the trial court, that Central Truck has failed to show a misrepresentation by GMC. It follows, therefore, that it cannot show reasonable reliance on an unproven misrepresentation, or any injury proximately caused by such misrepresentation. Again, we find no error in the trial court's grant of summary judgment on the concealment and negligent misrepresentation counts.

## II. Net Judgment Determination—the Cross Appeal

Central GMC, in its cross-appeal, contends that the trial court erred when, after setting off the parties' claims and counterclaims, it entered judgment in the amount of $1,197.11, plus costs, for Central Truck and against Central GMC. Central GMC simply avers that the trial court made a mistake in its calculation because it failed to take into account that Central Truck had already admittedly collected a portion of the amount alleged to be owed by Central GMC. As a result, Central GMC moved to alter or amend the judgment. The trial court denied the motion.

Central Truck, in its reply brief, claims to be "at a loss in interpreting the arguments and evidence in the record to determine how to square the evidence against [Central GMC's] argument." It points out that the trial court made factual findings that are entitled to deference, and it alleges that Central GMC's claim is not supported by evidence in the record.

What is ultimately before us, then, are two distinct but related issues: 1) Whether the trial court erred in calculating and entering its money judgment in favor of Central Truck; and 2) Whether the trial court erred in denying Central

GMC's motion to alter or amend the judgment. We address each contention in turn.

## 1. The Calculation

Central GMC seeks to persuade us that the amount of the judgment entered by the trial court in favor of Central Truck was incorrect because it did not take into account a credit of $45,713.84 that it alleges was already collected by Central Truck from Central GMC. Central GMC avers that Central Truck "repeatedly admitted" that it collected the money owed by Central GMC, and that the trial court thus erred in failing to credit that amount to Central GMC in its judgment calculation.

In our view, Central Truck is correct in its contention that Central GMC's claim is not supported by the record. Central GMC asserts that the record shows repeated admissions by Central Truck that it received the contested amount, but, in its brief, it points only to the deposition testimony of James Keyton, Central Truck's corporate designee, which was read, in part, into the record at trial and is quoted as:

Q. If I could direct your attention to paragraph 22 of the complaint, which is Exhibit 7, and paragraph 22 of the answer.

(Pause).

A. Yes, sir; okay.

Q. The second sentence reads—well, let me just start with "defendants withheld $55,694.04 from vacation pay and sick leave benefits from its July 2006 reconciliation payment to plaintiffs."

Is that an accurate statement or not?

A. That is accurate.

Central GMC points to no live trial testimony, pleadings, or documentary evidence as further support of its claim that the money had been paid, and the trial court apparently did not credit the above deposition testimony in rendering its judgment.

Furthermore, upon entering its judgment, the trial court stated:

> THE COURT: ... Okay. So what I'm going to do is I'm going to direct the clerk to enter judgment in favor of the defendant against the plaintiff. It's actually in favor of the counter-plaintiff and against the defendant. In favor of the defendant against the plaintiff in the amount of $1,197.11, plus costs.
>
> You all get back and run the numbers again. If my math is wrong, let me know within the next ten days. Okay.
> [CENTRAL TRUCK'S ATTORNEY]: Intuitively, Your Honor, it looks right. I didn't have the time to run the numbers.

Central GMC interposed no objection or question as to the propriety of the ruling until the filing of its motion to alter or amend, which is discussed below. For all these reasons, on this record, we see no reason to disturb the trial court's calculation that supports the money judgment.

## 2. The Motion to Alter or Amend

With regard to the denial of a motion to alter or amend the judgment under Md. Rule 2–534,[8] the appeal is " 'limited in scope and does not serve the normal functions of appeal from the original judgment.' " *In re Julianna B.,* 179 Md.App. 512, 558, 947 A.2d 90 (2008), *vacated as moot,* 407 Md. 657, 967 A.2d 776 (2009). An appeal from the denial of a motion asking the court to exercise its revisory power is governed by the abuse of discretion standard. *In re Adoption/Guardianship of Joshua M.,* 166 Md.App. 341, 351, 888 A.2d 1201 (2005). A ruling on a motion to alter or amend the judgment is "directed to the sound discretion of the court, and

---

8. Rule 2–534 provides, in pertinent part: "In an action decided by the court, on motion of any party filed within ten days after entry of judgment, the court may open the judgment to receive additional evidence, may amend its findings or its statement of reasons for the decision, may set forth additional findings or reasons, may enter new findings or new reasons, may amend the judgment, or may enter a new judgment."

in the absence of abuse thereof, no appeal will lie." *B & K Rentals & Sales v. Universal Leaf Tobacco,* 73 Md.App. 530, 537, 535 A.2d 492 (1988), *rev'd on other grounds,* 324 Md. 147, 596 A.2d 640 (1991).

As has been reiterated on numerous occasions, an abuse of discretion occurs:

> 'where no reasonable person would take the view adopted by the [trial] court [ ]'... or when the court acts 'without reference to any guiding principles.' An abuse of discretion may also be found where the ruling under consideration is 'clearly against the logic and effect of facts and inferences before the court [ ]'... or when the ruling is 'violative of fact and logic.'
>
> Questions within the discretion of the trial court are 'much better decided by the trial judges than by appellate courts, and the decisions of such judges should be disturbed where it is apparent that some serious error or abuse of discretion or autocratic action has occurred.' In sum, to be reversed '[t]he decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable.'

*Aventis Pasteur, Inc. v. Skevofilax,* 396 Md. 405, 418–19, 914 A.2d 113 (2007) (quoting *Wilson v. John Crane, Inc.,* 385 Md. 185, 198–199, 867 A.2d 1077 (2005), in turn quoting *In re Adoption/Guardianship No. 3598,* 347 Md. 295, 312–13, 701 A.2d 110 (1997)).

An abuse of discretion, therefore, " 'should only be found in the extraordinary, exceptional, or most egregious case.' " *Id.* at 419, 914 A.2d 113 (quoting *Wilson,* 385 Md. at 199, 867 A.2d 1077). Given that the abuse of discretion standard makes "generous allowances for the trial court's reasoning," *Das v. Das,* 133 Md.App. 1, 15, 754 A.2d 441 (2000), we grant great deference to that court's conclusion and uphold it unless it is apparent a serious error has occurred.

On this record, we find no such serious error. Given the evidence admitted, the testimony of the parties, and the

silence of Central GMC at trial when the judgment was announced, we are not persuaded that the trial court's denial of the motion to alter or amend was "far removed from any center mark imagined."

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED; COSTS TO BE ASSESSED 2/3 TO APPELLANT AND 1/3 TO APPELLEE.**